Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Amber L. Schubert (S.B.N. 278696)
(aschubert@sjk.law)
Sonum Dixit (S.B.N. 353395)
(sdixit@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:      (415) 788-4220
Facsimile:      (415) 788-0161

*Counsel for Plaintiffs Amanda Mayo,*
*Theresa Castillo, and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO / OAKLAND DIVISION

AMANDA MAYO and THERESA CASTILLO, Individually and on Behalf of All Others Similarly Situated,

     Plaintiffs,

  v.

PROSPER FUNDING, LLC, and PROSPER MARKETPLACE, INC.,

     Defendants.

Case No. 3:25-cv-08177-CRB

**AMENDED CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Upon personal knowledge as to their own acts, and based upon their investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiffs Amanda Mayo and Theresa Castillo, on behalf of themselves and all others similarly situated, allege as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs bring this class action against Defendants Prosper Funding, LLC ("Prosper Funding") and Prosper Marketplace, Inc. ("Prosper Marketplace") (together, "Defendants") for their failure to adequately secure and safeguard Plaintiffs' and other individuals' personally identifying information ("PII") including names, Social Security Numbers, and dates of birth.

2.      Defendant Prosper Funding is a financial technology company and online marketplace lender that facilitates peer-to-peer lending for personal loans, home equity loans, and credit cards.

3.      Defendant Prosper Funding is a subsidiary of Defendant Prosper Marketplace, a financial services company.

4.      In the course of providing these services, Defendants received PII from numerous individuals, including Plaintiffs. In turn, Defendants came into the possession of, and maintain extensive files containing PII of these individuals, and owe these individuals an affirmative duty to adequately protect and safeguard this private information against theft and misuse. Despite such duties created by statute, regulation, and common law, at all relevant times, Defendants utilized deficient data security practices, thereby allowing sensitive and private data to fall into the hands of strangers.

5.      On September 17, 2025, Prosper Funding notified Plaintiffs and other affected individuals of "unauthorized activity on our systems" and that it has "evidence that certain personal information, including Social Security Numbers, was obtained."[1]

6.      But for Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect these individuals' PII, the Data Breach would not have occurred.

---

[1] *See* Exhibit A; Exhibit B.

7.    Defendants are well-aware that they are at high risk of attempted cyberattack due to the high value of the sensitive data.

8.    Despite Defendants' awareness of both the value and sensitivity of the data they safeguarded and serious risk presented by insufficient security practices, Defendants did not take sufficient steps to ensure that their systems were secure. Defendants knew or should have known about the risk to the data they stored and processed, and the critical importance of adequate security measures in the face of increasing threats.

9.    The Data Breach was directly and proximately caused by Defendants' failure to implement reasonable and industry-standard data security practices necessary to protect their systems from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII of thousands of individuals—if not more—is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiffs and Class Members are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest of their lives. Consequently, Plaintiffs and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiffs and Class Members have lost the inherent value of their private data.

10.    By aggregating information obtained from the Data Breach with other sources or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names and other personal information to open new financial accounts, incur credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security.

11.    Defendant Prosper Funding failed to disclose in its Data Breach notice exactly when the Data Breach occurred.[2]

---

[2] *See id.*

12.     Defendants also have not disclosed how many individuals were affected.

13.     Defendants have not informed Plaintiffs and Class Members how many people were impacted, how the "cyber criminals" accessed Defendants' systems and the root cause of the Data Breach, whether the exfiltrated information was encrypted or anonymized, why it took so long to notify victims, or what specific remedial steps Defendants have taken to safeguard PII within their systems and networks (or otherwise purge unnecessary information) and to prevent further cyberattacks going forward. Without these critical details, Plaintiffs and Class Members cannot meaningfully mitigate the resulting effects of the Data Breach.

14.     Plaintiff Amanda Mayo is a Data Breach victim and received notification of the Data Breach from Defendant Prosper Funding on or around September 17, 2025.[3]

15.     Plaintiff Theresa Castillo is a Data Breach victim and received notification of the Data Breach from Defendant Prosper Funding on or around September 17, 2025.[4]

16.     As a result of Defendants' conduct and the resulting Data Breach, Plaintiffs' and Class Members' privacy has been invaded, their PII is now in the hands of criminals, they have either suffered or will suffer fraud or identity theft, or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

17.     Plaintiffs, on behalf of themselves and all others similarly situated, herein allege claims for negligence, breach of implied contract, invasion of privacy under Article I, Section 1 of the California Constitution, and violation of the California Customer Records Act, California Consumer Privacy Act of 2018, and violation of California's Unfair Competition Law. Plaintiffs on behalf of themselves and the Class, seek: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII in Defendants' custody, care, and control in order to prevent incidents like the Data Breach from recurring in the future and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

[3] *See* Exhibit A.

[4] *See* Exhibit B.

Amended Class Action Complaint                                             3

for Defendants to provide long-term identity theft protective services to Plaintiffs and Class Members; and (v) such other relief as the Court deems just and proper.

**PARTIES**

**A.    Plaintiff**

18.    Plaintiff Amanda Mayo is a resident and citizen of Connecticut.

19.    Plaintiff Theresa Castillo is a resident and citizen of California.

**B.    Defendants**

20.    Defendant Prosper Funding is a California limited liability company with its principal place of business located at 221 Main Street, 3rd Floor, San Francisco, California 94105.

21.    Defendant Prosper Marketplace is a corporation organized under the laws of Delaware, with its principal place of business located at 221 Main Street, 3rd Floor, San Francisco, California 94105.

**JURISDICTION AND VENUE**

22.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendants, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

23.    This Court has general personal jurisdiction over Defendants because they maintain their principal place of business in San Francisco, California, regularly conduct business in California, and have sufficient minimum contacts in California, such as to not offend traditional notions of fair play and substantial justice.

24.    Venue in this District is proper under 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, including Defendants collecting or storing the PII of Plaintiffs and the putative Class Members.

25.    Divisional Assignment: This action arises in San Francisco County, in that a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

County, where Defendants are headquartered and located. Pursuant to L.R. 3-2(d), all civil actions that arise in San Francisco County shall be assigned to the San Francisco or Oakland Division.

## FACTUAL BACKGROUND

### A.    Defendants Collect, Store, and Maintain Personally Identifiable Information

26.    Founded in 2005,[5] Prosper Funding is a financial technology company and online marketplace lender that facilitates peer-to-peer lending for personal loans, home equity loans, and credit cards.

27.    Prosper Funding has "helped over 1.7 million people access more than $27 billion in loans."[6]

28.    Defendants collect PII such as "name, address, email, telephone number, date of birth, Social Security number, driver's license number, passport number, government-issued identification details, and similar information to verify your identity"[7] to provide these financial services.

29.    Prosper Funding claims that its credit card—known as the Prosper Card— is "built on bedrock technology designed to protect you and your data from fraud."[8]

30.    Prosper Funding has extended over $1 billion in credit through the Prosper Card.[9]

31.    Prosper Funding claims that "ensuring that Prosper is private and safe is our highest priority."[10]

32.    Prosper Funding also employs the following measures to protect customer data: "rigid privacy policy[,]" "expert fraud prevention and protection[,]" "100% Identity Theft Guarantee[,]"

---

[5] *Helping people thrive*, PROSPER FUNDING LLC, https://www.prosper.com/about (last accessed Sept. 25, 2025).

[6] *Id.*

[7] Privacy and Security at Prosper, *available at* https://www.prosper.com/legal/security (last accessed Sept. 25, 2025).

[8] *A credit card built to help you take control*, PROSPER FUNDING LLC, https://www.prosper.com/credit-card (last accessed Sept. 25, 2025).

[9] PROSPER FUNDING LLC, *supra* note 5.

[10] Privacy and Security at Prosper, *available at* https://www.prosper.com/legal/security (last accessed Sept. 25, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

"Secure data center[,]" and "Secure encrypted sessions."[11]

33.    Defendants claim on their Privacy Policy that:

Prosper equips all servers with a Secure Socket Layer (SSL) certificate to ensure that when you connect to our websites, you can tell that you are on a Prosper website and that all data entered into the websites are transmitted to us in a secure encrypted channel. Once on our system, personal information can only be read or written through defined service access points, the use of which is password-protected. Data security is achieved through technical safeguards that include a combination of encryption, firewalls, intrusion prevention system, malware detection system, and data loss prevention systems. Prosper also conducts vulnerability scans of applications and systems regularly.

Access to the system is tightly controlled and limited to only those who have a need to access information. Administrative safeguards such as a security awareness program, background checks, and internal information use policy ensure that only trained and trusted staff are permitted to access personal information.[12]

34.    Defendants also claim to have the following "features of our security program":

***Secure Data Center***
We store all sensitive financial information in state-of-the-art, highly secure data centers that are audited per AICPA SOC for Service Organizations. Physical access to the data centers is strictly controlled and we use the latest threat prevention technologies such as network and web application firewalls, VPN, antivirus, Web filtering and antispam technologies.

***Session Time-Outs***
We employ session time-outs to protect your account or application. You will be logged out of the site automatically after a specified period of inactivity. This time-out feature reduces the risk of others being able to access your account or information if you leave your computer unattended.

***Account Authentication***
If you have an account, at a minimum, we require that you use a password or follow other secure steps we have instituted to allow you to access your account. If you create a password, you must use both numbers and letters in your password. We have also instituted secure steps by which you can regain access to your account should you forget your password. You should always choose a password that is difficult for others to guess and change your password frequently.[13]

35.    Despite these strong proclaimed proactive policies and approaches to data security

---

[11] *Id.*

[12] Prosper Privacy Policy & Federal Privacy Notice, *available at* https://www.prosper.com/legal/privacy-policy (last accessed Sept. 25, 2025).

[13] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

and privacy for their customers, Defendants failed to adequately secure and safeguard their systems and networks from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiffs and the Class.

**B.    The Data Breach Exposed Valuable PII**

36.    On September 17, 2025, Defendant Prosper Funding notified affected individuals via email that it "recently discovered unauthorized activity on [its] systems."[14]

37.    According to the Data Breach notice, Prosper Funding has "evidence that certain personal information, including Social Security Numbers, was obtained."[15]

38.    Despite Defendants' duties and commitments to safeguard sensitive and private information, Defendants failed to follow industry-standard practices in securing Plaintiffs' and the Class Members' PII, as evidenced by the Data Breach.

39.    The Data Breach Notices do not provide details about the root cause of the Data Breach, the vulnerabilities exploited, the criminals responsible for the breach, and the remedial measures undertaken to ensure such a breach does not occur again. To date, Defendants have not explained or disclosed these facts to Plaintiffs and Class Members.

40.    Without these details, Plaintiffs' and Class Members' ability to mitigate harms resulting from the Data Breach is severely diminished.

41.    Defendants have not yet offered credit monitoring until they determine "what data was affected."[16] This is woefully inadequate given the lifelong increased risk of fraud and identity theft that Plaintiffs and Class Members now face as a result of the Data Breach.

**C.    Defendants Had Ample Notice That They Were Likely Cyberattack Targets**

42.    At all relevant times, Defendants knew, or should have known, that the PII they were entrusted with was a target for malicious actors. Defendants knew this given the unique type and the significant volume of data on their networks, servers, and systems, comprising individuals' detailed

---

[14] *See* Exhibit A; Exhibit B.

[15] *Id.*

[16] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

and confidential personal information and, thus, the significant number of individuals who the exposure of the PII would harm.

43.    As custodians of Plaintiffs' and Class Members' PII, Defendants knew or should have known the importance of protecting their PII, and of the foreseeable consequences and harms to such persons if any data breach occurred.

44.    According to the Consumer Financial Protection Bureau, the number of data breach and identity theft complaints it received grew from 14,319 in 2020 to 32,469 in 2022.[17] It is well known among companies that PII such as social security numbers and financial information is valuable and frequently targeted by criminals.

45.    The Federal Trade Commission has warned consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[18]

46.    In April 2020, ZDNet reported that "ransomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[19]

47.    Criminals can commit all types of fraud, including: obtaining a driver's license or official identification card in the victim's name but the thief's picture, using the victim's name and SSN to obtain government benefits, to obtain lending or lines of credit, filing a fraudulent tax return using the victim's information. Identity thieves may obtain a job using the victim's social security

---

[17] *See Compromised: Why experts say data breaches are on the rise,* NBC 6 SOUTH FLORIDA, https://www.nbcmiami.com/responds/compromised-why-experts-say-data-breaches-are-on-the-rise/3473306/ (last accessed June 5, 2025).

[18] *See* What to Know About Identity Theft, FEDERAL TRADE COMMISSION (Sept. 2024), https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed June 5, 2025).

[19] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (April 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed Sept. 1, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

number, rent a house, or give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[20]

48.    Defendants' security obligations were especially important due to the substantial increase of cyberattacks and data breaches in recent years.

49.    Defendants knew or should have known that as large corporations, they are prime targets of ransomware actors. Defendants also knew or should have known that there was a foreseeable risk that Plaintiffs' and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

**D.    Defendants Breached Their Duties to Plaintiffs and Class Members, and Failed to Comply with Regulatory Requirements and Industry Practices.**

50.    Because Defendants were entrusted with PII at all times herein relevant, Defendants owed to Plaintiffs and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in their care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. Defendants also owed a duty to safeguard PII because they were on notice that they were handling highly valuable data and knew there was a significant risk they would be targeted by cybercriminals. Furthermore, Defendants knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

51.    Security standards commonly accepted among businesses like Defendants that store PII include, without limitation:

     i.    Maintaining a secure firewall configuration;

     ii.    Monitoring for suspicious or irregular traffic to servers or networks;

     iii.    Monitoring for suspicious credentials used to access servers or networks;

     iv.    Monitoring for suspicious or irregular activity by known users;

---

[20] *See* Warning Signs of Identity Theft, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed June 5, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

v.      Monitoring for suspicious or unknown users;

vi.     Monitoring for suspicious or irregular server requests;

vii.    Monitoring for server requests for PII;

viii.   Monitoring for server requests from VPNs; and

ix.     Monitoring for server requests for Tor exit nodes.

52.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[21] and protection of PII which includes basic security standards applicable to all types of businesses.[22]

53.     The FTC recommends that businesses:

i.      Identify all connections to the computers where sensitive information is stored.

ii.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii.    Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

iv.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

v.      Pay particular attention to the security of their web applications, the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

---

[21] Start with Security: A Guide for Business, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[22] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

vi.    Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

vii.    Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access control settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii.    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

54.    As described further below, Defendants owed a duty to safeguard PII under the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act") to ensure that all information they received, maintained, and stored was secure. This statute was enacted to protect Plaintiffs and the Class Members from the type of conduct in which Defendants engaged, and the resulting harms Defendants proximately caused Plaintiffs and the Class Members.

55.    Under the FTC Act, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members.

56.    Defendants breached their duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiffs' and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, allowing unmonitored and unrestricted access to

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiffs' and Class Members' confidential and private information. Additionally, Defendants breached their duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendants also violated their duties under the FTC Act.

57.     Defendants failed to prevent the Data Breach. Had Defendants properly maintained and adequately protected their systems, servers, and networks, the Data Breach would not have occurred.

58.     Additionally, the law imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of PII to Plaintiffs and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Defendants further breached their duties by failing to provide timely and adequate notice of the Data Breach to Plaintiffs and Class Members. In so doing, Defendants actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiffs and Class Members.

**E.      The Experiences of Plaintiffs**

***Plaintiff Amanda Mayo***

59.     Plaintiff Mayo has had a Prosper Card for the past year.

60.     Plaintiff Mayo received a data breach notification email dated September 17, 2025, from Prosper Funding. The letter informed her "that certain personal information, including Social Security Numbers" was obtained by an unauthorized actor who accessed Prosper Funding's systems.[23]

61.     A week after she received notification of the Data Breach, Plaintiff Mayo experienced a noticeable increase in spam emails, which she believes are connected to the exposure of her personal information. These emails are orders or bills with other individuals' names.

62.     Plaintiff Mayo trusted that Defendants would use reasonable measures to protect her data according to state and federal law.

---

[23] *See* Exhibit A.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

63.    As a proximate result of the Data Breach, Plaintiff Mayo will spend time for the foreseeable future and beyond dealing with its consequences and self-monitoring her accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time will be lost forever and cannot be recaptured.

64.    Plaintiff Mayo is experiencing anger, stress, and frustration because her sensitive information was stolen in the Data Breach, and not knowing by whom or for what purpose. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

65.    Plaintiff Mayo has been working to improve her credit and is concerned that the Data Breach will negate those efforts and decrease her credit score.

66.    Plaintiff Mayo suffered actual injuries in the form of damages to and diminution in the value of her PII—a form of intangible property that was entrusted to Defendants—which was compromised in and as a proximate result of the Data Breach.

67.    Plaintiff Mayo has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from her PII being obtained by unauthorized third parties and possibly cybercriminals.

68.    Plaintiff Mayo has a continuing interest in ensuring that her PII, which remains within Defendants' possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

69.    Defendants deprived Plaintiff Mayo of the earliest opportunity to guard herself against the Data Breach's harmful effects by failing to promptly notify her about it. It is unknown when the Data Breach actually occurred and how long Prosper Funding waited to notify Plaintiff Mayo and Class Members.

### ***Plaintiff Theresa Castillo***

70.    <u>Plaintiff Castillo took a personal loan from Prosper sometime in 2024.</u>

71.    Plaintiff Castillo received a data breach notification email dated September 17, 2025, from Prosper Funding. The letter informed her that "that certain personal information, including

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Social Security Numbers" was obtained by an unauthorized actor who accessed Prosper Funding's systems.[24]

72.     Plaintiff Castillo trusted that Defendants would use reasonable measures to protect her data according to state and federal law, especially since Plaintiff Castillo took a loan from Prosper Funding several years ago and felt confident that she would have a positive experience with them when she sought a loan from them again in 2024.

73.     On or around September 25, 2025, Plaintiff Castillo received an email from U.S. Bank notifying her that she opened a checking account.

74.     U.S. Bank then sent Plaintiff Castillo a second email notifying her that the account was approved.

75.     Shortly after this second email, U.S. Bank sent an email requesting Plaintiff Castillo's signature to open this checking account.

76.     Plaintiff Castillo also received a text message about this bank account.

77.     Because Plaintiff Castillo had not opened a checking account with U.S. Bank, she called them and inquired. She learned that the unauthorized actor who tried to open a bank account in her name had her Social Security number and her address.

78.     U.S. Bank informed Plaintiff Castillo that its authenticating department would put a stop to this unauthorized bank account.

79.     That same evening, Plaintiff Castillo called the three major credit bureaus to freeze her credit.

80.     As of September 30, 2025, Plaintiff Castillo was still waiting for her PIN that would aid her in unfreezing her credit at a later date.

81.     Plaintiff Castillo estimates that she spent around four-and-a-half hours on the phone and/or on hold with U.S. Bank and the three major credit bureaus.

82.     Plaintiff Castillo also called Defendant Prosper Funding that same day because she suspected there was a connection between the Data Breach and the aforementioned unauthorized attempt at opening a bank account.

---

[24] *See* Exhibit B.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

83.    Plaintiff Castillo requested identity theft protection and Prosper's customer service agent declined, instead advising Plaintiff Castillo to watch her credit account, get a credit report, and to call Prosper back if she identified suspicious activity.

84.    Plaintiff Castillo commented that the unauthorized opening of the U.S. Bank account constituted suspicious activity, but Prosper's customer service did not seem to share that view.

85.    As a proximate result of the Data Breach, Plaintiff Castillo will spend time for the foreseeable future and beyond dealing with its consequences and self-monitoring her accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time will be lost forever and cannot be recaptured.

86.    Plaintiff Castillo is experiencing anger, stress, and frustration because her sensitive information was stolen in the Data Breach, and not knowing by whom or for what purpose. Plaintiff Castillo's credit is very important to her, and she is very concerned about cybercriminals using her personal information, making unauthorized purchases, and potentially harming her credit. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

87.    Plaintiff Castillo suffered actual injuries in the form of damages to and diminution in the value of her PII—a form of intangible property that was entrusted to Defendants—which was compromised in and as a proximate result of the Data Breach.

88.    Plaintiff Castillo has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from her PII being obtained by unauthorized third parties and possibly cybercriminals.

89.    Plaintiff Castillo has a continuing interest in ensuring that her PII, which remains within Defendants' possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

90.    Defendants deprived Plaintiff Castillo of the earliest opportunity to guard herself against the Data Breach's harmful effects by failing to promptly notify her about it. It is unknown when the Data Breach actually occurred and how long Prosper Funding waited to notify Plaintiff Castillo and Class Members.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

### F.    Plaintiffs and the Class Suffered Actual and Impending Injuries Resulting From the Data Breach

91.    As a proximate result of Defendants' completely unreasonable security practices, identity thieves now possess the sensitive PII of Plaintiffs and the Class. That information is extraordinarily valuable on the black market and incurs direct costs to Plaintiffs and the Class. On the dark web—an underground Internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[25] And, "[t]he damage to affected [persons] may never be undone."[26]

92.    Unlike the simple credit-card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming therefrom and that the average financial loss experienced by an

---

[25] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d.

[26] *Id.*

identity theft victim was $1,160 per person.[27] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[28]

93.    The unauthorized disclosure of Social Security Numbers can be particularly damaging because Social Security Numbers cannot easily be replaced. In order to obtain a new number, a person must prove, among other things, he or she continues to be disadvantaged by the misuse. Thus, under current rules, no new number can be obtained until the damage has been done. Furthermore, as the Social Security Administration warns:

> You should know that other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new SSN, you shouldn't use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information isn't associated with your new number, the absence of any credit history under your new number may make it more difficult for you to get credit.[29]

94.    As a consequence of the Data Breach, Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially impairs Class Members' ability to obtain additional credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it

---

[27] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.

[28] *Id.*

[29] Social Security Administration, *Identity Theft and Your Social Security Number* (Oct. 2024), https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Sept. 23, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

## CLASS ACTION ALLEGATIONS

95.    Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), and where applicable, 23(c)(4), Plaintiffs seek certification of the following Nationwide Class and California Subclass (collectively, the "Class"):

> **Nationwide Class:** All persons in the United States who were impacted by the Data Breach, including all persons who were sent notice that their Personal Information was compromised as a result of the Data Breach.

> **California Subclass:** All persons in State of California who were impacted by the Data Breach, including all persons who were sent notice that their Personal Information was compromised as a result of the Data Breach.

96.    Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

97.    This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

98.    *Numerosity Under Rule 23(a)(1)*. The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all members of the Class in a single action will provide substantial benefits to the parties and the Court. Upon information and belief, Plaintiffs estimate that the Class is comprised of thousands of Class Members. The Class is sufficiently numerous to warrant certification.

99.    *Commonality Under Rule 23(a)(2)*. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Class. These common questions, which do not vary among members of the Class and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

a.    Whether Defendants knew or should have known that their computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

b.    Whether Defendants failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that their computer systems and networks were protected;

c.    Whether Defendants failed to take available steps to prevent and stop the Data Breach from occurring;

d.    Whether Defendants failed to comply with their own policies and applicable laws, regulations and industry standards relating to data security;

e.    Whether Defendants owed a legal duty to Plaintiffs and Class Members to protect their PII;

f.    Whether Defendants breached any duty to protect the PII of Plaintiffs and Class Members by failing to exercise due care in protecting their sensitive and private information;

g.    Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the breach of their systems, resulting in the loss of the PII of Plaintiffs and Class Members.

h.    Whether Defendants provided timely, accurate, and sufficient notice of the Data Breach to Plaintiffs and the Class Members;

i.    Whether Plaintiffs and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

j.    Whether Plaintiffs and Class Members are entitled to injunctive or equitable relief, including restitution.

100.    *Typicality Under Rule 23(a)(3)*. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs had their PII compromised in the Data Breach. Defendants' uniformly unlawful course of conduct injured Plaintiffs and Class Members.

101.    *Adequacy of Representation Under Rule 23(a)(4)*. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiffs and their counsel intend to

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

vigorously prosecute this action for the Class's benefit and have the resources to do so. Plaintiffs and her counsel have no interests adverse to those of the other members of the Class.

102.    _Predominance and Superiority_. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Even if each Class Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

103.    As a result of the foregoing, class treatment under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and (c)(4) is appropriate.

**FIRST CAUSE OF ACTION**
**Negligence**
***(On Behalf of Plaintiffs and the Nationwide Class)***

104.    Plaintiffs incorporate the above allegations as if fully set forth herein.

105.    Because Defendants were entrusted with such PII at all times herein relevant, they owed to Plaintiffs and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in their care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. This duty arose independently from any contract.

106.    Defendants knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII, including the importance of adequate data security and the high frequency of ransomware attacks and well-publicized data breaches. Defendants owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendants' failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that sensitive information. Indeed, on their websites, Defendants commit to data privacy, including safeguarding PII.

107.    Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's PII by failing to limit access to this information to unauthorized third parties and by not properly supervising both the way the PII was stored, used, and exchanged, and those in their employ responsible for such tasks.

108.    Defendants owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiffs and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

109.    Defendants also had a common law duty to prevent foreseeable harm to others. Defendants had full knowledge of the sensitivity and high value of the PII that they stored and the types of foreseeable harm and injury-in-fact that Plaintiffs and Class Members could and would suffer if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. Defendants' conduct created a foreseeable and unreasonable risk of harm to Plaintiffs and Class Members, who were the foreseeable victims of Defendants' inadequate data security practices.

110.    Defendants violated their duty to implement and maintain reasonable security procedures and practices, including through their failure to adequately restrict access to their systems that held millions of individuals' PII or encrypt or anonymize such data. Defendants' duty included, among other things, designing, maintaining, and testing their information security controls to ensure that PII in their possession was adequately secured by, for example, encrypting or anonymizing

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

111.    Defendants' duty of care also arose pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), under which Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members.

112.    The FTC Act was enacted to protect Plaintiffs and the Class Members from the type of wrongful conduct in which Defendants engaged.

113.    Defendants' violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiffs' negligence claim. Those statutes were designed to protect a group to which Plaintiffs belong and to prevent the types of harm that resulted from the Data Breach.

114.    Defendants breached their duty to exercise reasonable care in protecting Plaintiffs' and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiffs' and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of services to their clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiffs' and Class Members' confidential and private information. Additionally, Defendants breached their duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendants also violated their duties under the FTC Act.

115.    The law imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of PII to Plaintiffs and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Defendants further breached their duties by failing to provide any notice of the Data Breach to Plaintiffs and Class Members. In so doing, Defendants actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Plaintiffs and Class Members. Timely disclosure was necessary so that Plaintiffs and Class Members could, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

116.    Defendants failed to adopt reasonable data security measures, in breach of the duties they owed to Plaintiffs and Class Members.

117.    Plaintiffs and Class Members had no ability to protect their PII once it was in Defendants' possession and control. Defendants were in an exclusive position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

118.    But for Defendants' breach of duty to adequately protect Class Members' PII, Class Members' PII would not have been stolen. As a result of Defendants' negligence, Plaintiffs and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between Defendants' failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiffs and Class Members.

119.    As a direct and traceable result of Defendants' negligence, Plaintiffs and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiffs and the Class include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendants; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendants' possession

and is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the personal information in their possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

120.    Defendants' negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendants' care, and its failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

121.    Plaintiffs and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiffs and Class Members are also entitled to the injunctive relief sought herein.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
#### *(On Behalf of Plaintiffs and the Nationwide Class)*

122.    Plaintiffs incorporate the above allegations as if fully set forth herein.

123.    Plaintiffs and Class Members were required to provide their PII to Defendants to obtain their financial services.

124.    Through their course of conduct, Plaintiffs and the Class Members entered into implied contracts with Defendants under which Defendants agreed to safeguard and protect their confidential and private PII and to timely and accurately notify Plaintiffs and Class Members if their information had been breached and compromised.

125.    Defendants acquired, stored, and maintained the PII of Plaintiffs and the Class.

126.    Plaintiffs and Class Members were required to provide, or authorize the transfer of, their private information in order for Defendants to provide their services.

127.    Defendants solicited, offered, and invited Class Members to provide their private information as part of their regular business practices. Plaintiffs and Class Members accepted Defendants' offer and provided their private information to Defendants.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

128.    When Plaintiffs and Class Members provided their PII to Defendants, they entered into implied contracts with Defendants and intended and understood that PII would be adequately safeguarded as part of these services.

129.    Defendants' implied promise of confidentiality to Plaintiffs and Class Members include consideration beyond those pre-existing general duties owed under the FTC Act, or other state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

130.    Defendants' implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data; (b) restricting access to qualified and trained agents; (c) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (d) applying or requiring proper encryption; (e) multifactor authentication for access; (f) protecting Plaintiffs' and Class Members' PII in compliance with federal and state laws and regulations and industry standards; and (g) other steps to protect against foreseeable data breaches.

131.    Defendants' implied promises to safeguard Plaintiffs' and Class Members' PII are evidenced by representations on Defendants' websites. The mutual understanding and intent of Plaintiffs and Class Members on the one hand, and Defendants on the other, is further demonstrated by their conduct and course of dealing.

132.    Plaintiffs and the Class Members would not have entrusted their PII to Defendants in the absence of such an implied contract. Had Defendants disclosed to Plaintiffs and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and the other Class Members would not have provided their PII to Defendants.

133.    Defendants recognized that Plaintiffs' and Class Members' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and the other Class Members.

134.    Plaintiffs and the Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

135.    Defendants breached the implied contracts they made with their clients by failing to take reasonable measures to safeguard their PII as described herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

136.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other Class Members suffered and will continue to suffer damages from: (i) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) the loss of the confidentiality of the stolen PII, (iii) the illegal sale of the compromised data on the dark web, (iv) lost work time, and (v) other economic and non-economic harms.

137.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to strengthen their data security systems, submit to future audits of those systems, and provide adequate long-term credit monitoring and identity theft protection services to all persons affected by the Data Breach.

### THIRD CAUSE OF ACTION
**Injunctive/Declaratory Relief**
*(On Behalf of Plaintiffs and the Nationwide Class)*

138.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

139.    Defendants owe a duty of care to Plaintiffs and Class Members, which required Defendants to adequately monitor and safeguard Plaintiffs' and Class Members' PII.

140.    Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiffs and Class Members.

141.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' PII and whether Defendants are currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their PII. Plaintiffs allege that Defendants' data security measures remain inadequate. Furthermore,

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Plaintiffs and the Class continue to suffer injury as a result of the compromise of their PII and the risk remains that further compromises of their private information will occur in the future.

142.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.   Defendants owe a legal duty to adequately secure the PII of Plaintiffs and the Class within its care, custody, and control under the common law, and Section 5 of FTC Act;

    b.   Defendants breached their duty to Plaintiffs and the Class by allowing the Data Breach to occur;

    c.   Defendants' existing data monitoring measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiffs and the Class within Defendants' custody, care, and control; and

    d.   Defendants' ongoing breaches of said duties continue to cause harm to Plaintiffs and the Class.

143.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs, Plaintiffs and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiffs and the Class for the serious risks of future harm.

144.    The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiffs and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendants' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

145.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach or

cybersecurity incident, thus preventing future injury to Plaintiffs and the Class and other persons whose PII would be further compromised.

**FOURTH CAUSE OF ACTION**
**Violation of the Unfair Competition Law**
**Bus. & Prof. Code § 17200 et seq. ("UCL")**
*(On Behalf of Plaintiffs and the Nationwide Class)*

146.     Plaintiffs, individually and on behalf of the Nationwide Class, incorporate the above allegations as if fully set forth herein.

147.     Plaintiffs plead this claim for equitable relief, including restitution and injunctive relief, in the alternative to their claims for damages.

148.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

149.     Defendants' actions as alleged herein in this Class Action Complaint constitute an "unlawful" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 *et seq.* because Defendants' actions: (a) violated the California Consumer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, (b) violated the CCPA, Cal. Civ. Code §§ 1798.100 *et seq.*, (c) constituted negligence; and (d) violated federal law and regulations, including the FTC Act.

150.     Defendants' actions as alleged in this Class Action Complaint also constitute an "unfair" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious. The harm caused by Defendants' wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to the Class, including Plaintiffs. There were ample reasonably available alternatives that would have furthered Defendants' legitimate business practices, including using industry-standard technologies to protect data (e.g., two-factor authorization, effective encryption and anonymization, compartmentalization of sensitive data, software patches, limiting how much data any user may access, and the purging of data no longer necessary for Defendants' services). Defendants also unreasonably delayed in notifying Plaintiffs and the Class Members regarding the unauthorized release and disclosure of their PII. Additionally, Defendants' conduct was "unfair" because it violated the legislatively declared policies reflected by California's strong data-breach and online-privacy laws, including the California Consumer Records

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Act, Cal. Civ. Code §§ 1798.80, *et seq.*, the CCPA, Cal. Civ. Code §§ 1798.100, *et seq.*, and the California constitutional right to privacy, Cal. Const. Art. 1, § 1.

151.    Defendants' conduct also is deceptive in violation of the UCL. Defendants' fraudulent business acts and practices include:

    a.  Failing to adequately secure the personal information of Plaintiffs and Class Members from disclosure to unauthorized third parties or for improper purposes;

    b.  Enabling the disclosure of personal and sensitive facts about Plaintiffs and Class Members in a manner highly offensive to a reasonable person;

    c.  Enabling the disclosure of personal and sensitive facts about Plaintiffs and Class Members without their informed, voluntary, affirmative, and clear consent;

    d.  Omitting, suppressing, and concealing the material fact that Defendants did not reasonably or adequately secure Plaintiffs' and Class Members' personal information.

152.    Defendants' omissions were material because they were likely to deceive reasonable consumers about the adequacy of their data security and ability to protect the confidentiality of Plaintiffs' and Class Members' personal information.

153.    The harm from Defendants' conduct was not reasonably avoidable by consumers. Plaintiffs and Class Members were required to provide their PII to Defendants to receive financial services. Plaintiffs and Class Members did not know of, and had no reasonable means of discovering, that their information would be exposed to hackers through inadequate data security measures.

154.    There were reasonably available alternatives that would have furthered Defendants' business interests of electronically transferring their customers' information while protecting PII.

155.    A reasonable person would regard Defendants' derelict data security and the Data Breach as important, material facts that could and should have been disclosed.

156.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct, Plaintiffs lost money or property because their sensitive personal information experienced a diminution of value and because they devoted additional time to monitoring their financial accounts for fraudulent activity. Plaintiffs face ongoing and impending damages related to theft of their PII.

157.    Defendants' wrongful practices constitute a continuing course of unfair competition because, on information and belief, Defendants have failed to remedy the lax security practices or

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

even fully notify all affected California persons. Plaintiffs and the Class seek equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 to end Defendants' wrongful practices and require Defendants to maintain adequate and reasonable security measures to protect the PII of Plaintiffs and the California Subclass.

158.    Plaintiffs and Class Members lack an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied through damages, ongoing identity theft and fraud, as well as long term incalculable risk associated with medical fraud.

159.    Further, if an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial. Defendants have still not provided adequate information on the cause and scope of the Data Breach. Plaintiffs and Class Members lack an adequate remedy at law that will reasonably protect against the risk of a further breach.

160.    Plaintiffs and the Class also seek an order requiring Defendants to make full restitution of all monies they received through their wrongful conduct, along with all other relief permitted under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

## FIFTH CAUSE OF ACTION
### Invasion of Privacy Under California's Constitution (Article 1, § 1)
### *(On Behalf of Plaintiff Castillo and the California Subclass)*

161.    Plaintiff Castillo, individually and on behalf of the California Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

162.    Plaintiff Castillo and California Subclass Members have an interest in: (1) precluding the dissemination and/or misuse of their Private Information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including, but not limited to, the right to visit and interact with various internet sites for the provision of financial services without the risk of their data being exfiltrated.

163.    Plaintiff Castillo and California Subclass Members had a reasonable expectation that their communications, identity, and other data would remain confidential, and Defendants would keep its platform secure.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

164.    By failing to secure Plaintiff Castillo's and California Subclass Members' personal data, Defendants intentionally invaded Plaintiff Castillo's and California Subclass Members' right to privacy under the California Constitution.

165.    This invasion of privacy is serious in nature, scope, and impact because it relates to consumers' Private Information. Moreover, it constitutes an egregious breach of the societal norms underlying the right of privacy.

166.    As a result of Defendants' actions, Plaintiff Castillo and California Subclass Members have suffered harm and injury, including but not limited to invasion of their privacy rights.

167.    Plaintiff Castillo and California Subclass Members have been damaged as a direct and proximate result of Defendants' invasion of privacy and are entitled to just compensation, including monetary damages.

168.    Plaintiff Castillo and California Subclass Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

169.    Plaintiff Castillo and California Subclass Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendants' actions, directed at injuring Plaintiff Castillo and California Subclass Members in conscious disregard of their rights.

170.    Such damages are needed to deter Defendants from engaging in such conduct in the future.

171.    Plaintiff Castillo also seeks other such relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION
### Violation of the California Customer Records Act
### Cal. Civ. Code §§ 1798.80 *et seq.* ("CCRA")
### *(On Behalf of Plaintiff Castillo and the California Subclass)*

172.    Plaintiff Castillo, individually and on behalf of the California Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

173.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

174.    Defendants are businesses that own, maintain, or license personal information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiff Castillo and California Subclass Members.

175.    Defendants violated Cal. Civ. Code § 1798.81.5 by failing to implement reasonable measures to protect California Subclass Members' PII.

176.    Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

177.    Defendants are businesses that own or license computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.

178.    Plaintiff Castillo's and California Subclass Members' PII includes personal information identified in Cal. Civ. Code § 1798.82(h) such as their names and Social Security numbers, and is thereby covered by Cal. Civ. Code § 1798.82.

179.    Plaintiff Castillo and the California Subclass Members are "customers" within the meaning of Cal. Civ. Code § 1798.80(c), as their personal information was provided to Defendants in the process of receiving Defendants' financial services.

180.    The Data Breach constituted a breach of Defendants' security systems, networks, and servers.

181.    Because Defendants reasonably believed that Plaintiff Castillo and California Subclass Members' PII was acquired by unauthorized persons during the Data Breach, Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

182.    Defendants unreasonably delayed informing Plaintiff Castillo and the California Subclass Members about the breach of security of their PII after they knew the breach had occurred.

183.    Upon information and belief, no law enforcement agency instructed Defendants that notification to California Subclass Members would impede an investigation.

184.    Thus, by failing to disclose the Data Breach in a timely and accurate manner, Defendants also violated Cal. Civ. Code § 1798.82.

185.    Pursuant to Cal. Civ. Code § 1798.84, "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable," "[a]ny customer injured by a violation of this title may institute a civil action to recover damages," and "[a]ny business that violates, proposed to violate, or has violated this title may be enjoined."

186.    As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff Castillo and California Subclass Members were (and continue to be) injured and suffered (and will continue to suffer) damages, as described above.

187.    Plaintiff Castillo and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and equitable and injunctive relief.

### SEVENTH CAUSE OF ACTION
**Violation of the California Consumer Privacy Act of 2018**
**Civ. Code § 1798.100 *et seq.* ("CCPA")**
***(On Behalf of Plaintiff Castillo and the California Subclass)***

188.    Plaintiff Castillo, individually and on behalf of the California Subclass, incorporates the above allegations as if fully set forth herein.

189.    Section 1798.150(a)(1) of the CCPA provides, "[a]ny consumer whose nonencrypted or nonredacted personal information, as defined by [Civil Code section 1798.81.5(d)(1)(A)] . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

190.    Plaintiff Castillo is a consumer and California resident as defined by Civil Code section 1798.140(i).

191.    Defendants are a "business" as defined by Civil Code section 1798.140(d)(2) because they are "organized or operated for the profit or financial benefit of [their] shareholders or other owners," and "collect[] consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determine[] the purposes and means of the processing of consumers' personal information, that do[] business in the state of California."

192.    Plaintiff Castillo's and California Subclass Members' personal information, as defined by Civil Code section 1798.140(v)(1), was subject to unauthorized access and exfiltration, theft, or disclosure. The Data Breach described herein exposed, without limitation, Social Security numbers.

193.    Defendants maintained Plaintiff Castillo's and California Subclass Members' PII in a form that allowed criminals to access it.

194.    The Data Breach occurred as a result of Defendants' failure to implement and maintain reasonable security procedures and practices for protecting the exposed information given its nature. Defendants failed to monitor their systems to identify suspicious activity and allowed unauthorized access to Plaintiff Castillo's and California Subclass Members' PII.

195.    Consistent with Civil Code Section 1798.150(b), Plaintiff Castillo will provide written notice to Defendants identifying the CCPA provisions that Defendants violated.

196.    On behalf of California Subclass Members, Plaintiff Castillo presently seeks actual pecuniary damages and injunctive relief in the form of an order enjoining Defendants from continuing to violate the CCPA. Unless and until Defendants are restrained by order of the Court, their wrongful conduct will continue to cause irreparable injury to Plaintiff Castillo and the California Subclass.

197.    If Defendants fail to timely rectify or otherwise cure the CCPA violations described herein, individually and on behalf of the California Subclass, Plaintiff Castillo reserves her right to amend this Class Action Complaint to seek statutory damages and any other relief the Court deems proper as a result of Defendants' CCPA violations pursuant to Cal. Civ. Code § 1798.150(a).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class set forth herein, respectfully request the following relief:

A.    Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiffs and their counsel to represent the Class;

B.    Entering judgment for Plaintiffs and the Class;

C.    Granting permanent and appropriate injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendants to adequately safeguard the PII of Plaintiffs and the Class by implementing improved security controls;

D.    Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E.    Awarding Plaintiffs and Class Members statutory or punitive damages as allowed by law in an amount to be determined at trial;

F.    Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of Defendants' unlawful acts, omissions, and practices;

G.    Awarding to Plaintiffs and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H.    Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I.    Granting such further and other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: October 7, 2025

**SCHUBERT JONCKHEER & KOLBE LLP**

*/s/ Amber L. Schubert*
Amber L. Schubert

Robert C. Schubert (S.B.N. 62684)
Amber L. Schubert (S.B.N. 278696)
Sonum Dixit (S.B.N. 353395)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:    (415) 788-4220
Facsimile:    (415) 788-0161
E-mail:        rschubert@sjk.law
               aschubert@sjk.law
               sdixit@sjk.law

*Counsel for Plaintiffs Amanda Mayo, Theresa Castillo, and the Putative Class*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220